(No. 2103—▮▮▮▮▮)

JOHN H. RAY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 15, 1935.*
*Rehearing denied, October 12, 1937.*

LEO P. BAIRD AND L. FRED O'BRIEN, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

Mr. Justice Linscott delivered the opinion of the court:

John H. Ray, the plaintiff, had been in the employ of the State of Illinois for several years in the Highway Department. On March 6, 1930 he was operating a gravel and dirt highway grader, which was being drawn by tractor on a public highway between the Counties of Knox and Peoria. He was standing on the rear end of the machine, which was proceeding in a southerly direction, when one W. G. Anderson, driving an automobile also in a southerly direction struck the grader and knocked the claimant to the ground, where he landed upon his head and shoulders.

At the time of the injuries, claimant was receiving $125.00 per month and received that sum from the time of his injuries until he returned to his employment, and was carried on the monthly payroll of the State at $125.00 per month until May 12, 1931. He was then placed upon an hourly basis and was paid about $40.00 per month from May 12, 1931 until November 25, 1931, when his services were terminated by State officials, for the reason that his services were of such a nature that they were entirely insufficient and unsatisfactory to the department.

He filed his suit for the May Term, 1931 in the Circuit Court of Warren County against Anderson, and upon a trial of that case by a jury, was awarded the sum of $100.00 damages, but has failed to collect that.

This claim was filed with the clerk of this court on April, 1933. Numerous injuries were alleged and damages claimed in the sum of $4,925.00. Because of the view that we take of this case, it will be unnecessary for us to determine the extent of claimant's injuries or the amount of damages.

From the above, it will be noted that he was injured on the 6th day of March, 1930 and claim filed on April 3, 1933, more than three years after the alleged injuries.

Under the authority laid down by the Supreme Court of Illinois in the case of *Lewis* vs. *Industrial Commission,* 357 Ill. 309, an opinion filed on June 15, 1934 and re-hearing denied October 3, 1934, it is held that a claim for compensation is not made within six months, as required by Section 24 of the Workmen's Compensation Act, where the employee returned to work after the injury, worked for several months, no claim for compensation being made during the six months

following the injury, and payment of the employee's wages to his wife during his illness and up to the time of his death, the same is not the payment of compensation within the meaning of the statute allowing claim to be made within six months thereafter, where such wages were paid and accepted as wages without reference to any claim for compensation. In this case, the facts are the same. Ray received his wages, and although his wages were reduced after a time, it appears that all sums were paid to him as wages.

Section 24 of the Workmen's Compensation Act declares that no proceeding for compensation shall be maintained unless claim has been made within six months after the accident, or, in the event that payments have been made under the provisions of the act, unless written claim has been made within six months after such payments have ceased and a receipt therefor or a statement of the amount of compensation paid shall have been filed with the commission. The section concludes with the proviso that, in any case, unless written claim for compensation is filed within one year after the date of the last payment of compensation, the right to file an application therefor shall be barred. Subdivision (a) of Section 8 provides that the furnishing by an employer of first aid medical and surgical services and all necessary medical, surgical and hospital services thereafter, limited, however, to that which is reasonably required to cure or relieve from the effects of the injury, shall not be construed as an admission of liability on the part of the employer to pay compensation, and that the furnishing of any such services shall not be construed as the payment of compensation.

The Supreme Court in the Lewis case and other cases, held that the making of a claim for compensation within the prescribed period is jurisdictional and a condition precedent to the right to maintain a proceeding under the statute.

This court has held in *Crabtree* vs. *State of Illinois* that making claim for compensation in this court and filing application for compensation within the time fixed by the Workmen's Compensation Act is a condition precedent, without which this court is without jurisdiction to proceed with the hearing.

We, therefore, hold that we have no jurisdiction in this case, and claim is accordingly dismissed.

ADDITIONAL OPINION ON PETITION FOR REHEARING.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

A petition for rehearing was filed in the above entitled cause. It is claimed that certain points were overlooked, one of them being that the court stated that Mr. Ray filed his suit for the May Term, 1931 in the Circuit Court of Warren County against Anderson (Anderson being the defendant in this suit brought to recover damages for Ray's injury), and upon a trial of the case by a jury, was awarded the sum of $100.00 damages, but has failed to collect it. That statement was taken from the sworn declaration or petition filed in this case, and it was assumed by the court that if payment of the $100.00 was afterwards made, that an amendment would have been made to the declaration or petition. While it is true that Mr. Ray did testify that the $100.00 was paid, it is likewise true that the mis-statement in the opinion was not entirely the fault of the court.

The petition for rehearing also relies upon a statement made by Fred Tarrent to the effect that from the time of Ray's injury, March 6, 1930 to the date of his release on November 25, 1931, Mr. Ray was paid a total sum of $2,233.07, only a part of which was earned by his services to the department, and it appears that he was incapacitated by the injury. There is nothing in the statement which shows which part was earned or unearned. Mr. Tarrent also stated that it was his opinion that Ray was entitled to some compensation. From Mr. Tarrent's statement, it appears that he did receive some compensation.

It is also contended that another letter from Mr. Tarrent addressed to L. Fred O'Brien, stated that he, Mr. Tarrent and others connected with the Highway Department, met with Mr. Ray and discussed the details of procedure outlining to him specifically the course necessary for him to follow and explaining that it was necessary for him to attempt to collect damages from Mr. Anderson before he could file his case in the Court of Claims for damages. Assuming that Mr. Tarrent did make such a statement, that is not the law and could not be followed by this court. It is also argued that Mr. Tarrent stated: ''During this entire period and for a considerable length of time afterwards, Mr. Ray was carried on the monthly payroll at $125.00 a month which was his stipulated

salary. He did practically no productive work on his maintenance section during this entire period."

Mr. Ray's testimony on this, however, is in conflict. He says that from March 6, 1930, he was confined at home and did not report for duty for approximately four months. "I returned to duty after four months. After I returned to duty, I supervised the work. I did not attempt to do any manual labor. My duties consisted of just overseeing the work; going over the road, patrolling the road every day from one end to the other, round trip. I would have men working in different places at the job. During that time, I furnished my own car and my own gasoline. I received from salary or compensation from March 6, 1930 until March 12, 1931, $125.00 per month." This is misstated in the abstract, but it appears from Ray's testimony that he received $125.00 per month until May 12, 1931; until he was released from the service of the department on November 25, 1931, he received $458.07 at the rate of forty cents per hour. This money was received on account of his employment. He also testified that Mr. Heffner of the Peoria District Office gave him notice that his services would terminate on the 25th of November, 1931, and he was then informed that he wasn't able to do the work and that they had to get someone in the department who could.

In the petition for rehearing it is stated that they rely upon the case of *Kennedy* vs. *State of Illinois*, 7 C. C. R. 260, and it is contended that the facts in the Kennedy case are in point with the facts in the case at bar, and in that case this court said: "The evidence discloses that claimant was paid compensation in the amount of Three Hundred Seventy-five Dollars ($375.00). Such payment at the rate which claimant was entitled to receive, to-wit, Fourteen Dollars and Forty-two Cents ($14.42) per week, paid his compensation from the day after the accident to March 27th, 1932. The record shows that the declaration herein was filed in this court on February 14th, 1933."

Under Section 24 of the Compensation Act, which we are bound to consider, application for compensation must be filed within one year after the date of the injury or within one year after the date of the last payment of compensation.

According to Ray's testimony, the last compensation that he received, whether he now contends was for services

rendered or strictly compensation, was November, 1931. This claim was filed on April 3, 1933. Manifestly, we have no jurisdiction in the case, but even if we had jurisdiction, when we take into consideration the medical testimony of the claimant himself, we would be compelled to deny an award.

Dr. E. E. Barbour on cross-examination stated that he never saw the claimant until the 24th, 25th and 26th of September, 1930, when he examined him, and that was the only examination he made; that he did form an opinion but it was the result of talking with others, and that he couldn't tell at that time how extensive a wound the claimant had received, and that would have something to do with his opinion. He also stated that the extent of the injury might, or might not make some difference in his opinion. He also stated that the dizziness complained of by the claimant was not necessarily due to an accident. The claimant was 68 years old at the time of the injury, and this Doctor stated that men of that age are apt to have dizzy spells as a natural proposition and not attributable to any accident. He also stated that the cause of his dizziness might have been due to something that occurred after the date of the injury and before his examination.

Dr. C. J. Hyslop was called and his direct examination was conducted by Mr. O'Brien. He was Fifth District Health Supervisor of communicable diseases under Public Health Department and employed by that department. He gave the claimant a cursory examination, which consisted of a general examination without taking blood tests, urinalysis, X-ray, seeing plates, or any laboratory work. He stated that he observed a man of about 70 years. Dr. Hyslop made a superficial neurological examination, and found a man well preserved, well nourished, weighing about one hundred seventy pounds, and apparently in fairly good health, suffering from a cataract on the right eye—slight cataract on both eyes. His heart was negative, and his blood pressure was 162/104, a little high for his age; no romberg sign and his coordination was fairly good. After bending his body, he is slightly unsteady, but in a minute or less, his coordination is very good. His walk is fairly normal; not very much hesitancy, no limp and no cane. Dr. Hyslop stated that in his opinion, for a man of Mr. Ray's age, he is in apparently very good physical condition, and guessed that he had an expectancy of at least eight

years. He thought he could only perform light manual labor. He stated that he was about fifty per cent efficient. On cross-examination he stated that he got around as a man of his age would get around, and his reaction after bending over was about normal for a man of his age, and stated that from his diagnosis he would say that the claimant had arteric schlerosis with beginning senility, with a chronic nephretis and a prostatic involvement, which is natural to assume in a man of his age, and which he found. His blood pressure, which is higher than normal, corroborates this statement. He further testified that these pathological conditions were no more attributable to trauma, that might have been occasioned two or three years ago, than to ordinary senility.

In a personal injury case, the claimant was given an award by the jury in the sum of $100.00. Whether this award was paid or not paid is immaterial in this case. We assume that the same medical testimony, at least by one witness it is true, was given at the trial of the personal injury case as was given here. It is quite apparent that the jury and the court that tried the case was of the opinion that Mr. Ray's injuries were in fact not as serious as he alleged in his claim in this court, but be that as it may, this court is bound by Section 24 of the Compensation Act, and because application for compensation was not filed within one year after the date of the injury or within one year after the date of the last payment of compensation, the right to file such application is barred, and we hold that we would have no jurisdiction in this case to grant compensation.